**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone:  (305) 374-0440
e-mail:    paul@markmigdal.com
           lauren@markmigdal.com

**MORTGAGE RECOVERY LAW GROUP, LLP**
Michael H. Delbick (CA State Bar No. 139200)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone:  (818) 630-7900
e-mail:    mdelbick@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
Joshua H. Packman (to seek admission pro hac vice)
3501 Fairfax Avenue
Arlington, Virginia 22226
Telephone:  (703) 474-1435
e-mail:    jpackman@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK, <br><br> Plaintiff, <br><br> vs. <br><br> THE MORTGAGE LINK, INC., <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

# **INTRODUCTION**

1.      Pursuant to written agreements, defendant The Mortgage Link, Inc. ("Mortgage Link" or "Defendant") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu").  As part of their agreements, Mortgage Link promised to indemnify WaMu for any losses arising either directly or indirectly, or in any way as a result of its acts or omissions and for its submission of any inaccurate or incomplete application or other documentation for loans that Mortgage Link brokered.

2.      After WaMu funded the loans from Mortgage Link, WaMu sold Mortgage Link-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee").  The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least seventeen (17) mortgage loans brokered by Mortgage Link ("Mortgage Link Defective Loans").

3.      Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R" or "Plaintiff") incurred losses settling the Trustee's claims.  FDIC-R's losses arose out of and/or related to Mortgage Link's acts or omissions, including, but not limited to, its provision of inaccurate or incomplete loan applications or other documentation prepared by or at the direction of Mortgage Link including, *inter alia*, Mortgage Link's submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4.      FDIC-R demanded that Mortgage Link honor its written contractual indemnification obligation.  Because Mortgage Link has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

COMPLAINT

## **PARTIES, JURISDICTION, AND VENUE**

5.     The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States.  12 U.S.C. §§ 1811, 1821(d).  Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets.  FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6.     Mortgage Link is a Maryland corporation with its principal place of business in Rockville, Maryland.  Mortgage Link was previously registered and licensed to do business in California.

7.     This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8.     Mortgage Link contractually agreed to venue in this district.  *See* Long Beach Mortgage Broker Agreement (attached hereto as Exhibit 1), ¶ 21.  Additionally, venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.

## **FACTUAL ALLEGATIONS**

9.     WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

COMPLAINT

10.    On information and belief, Mortgage Link engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

**A. Mortgage Link's Contractual Obligations**

11.    Mortgage Link and WaMu had a contractual business relationship, governed by mortgage broker agreements, including the Long Beach Mortgage Broker Agreement ("LBM Agreement") and the Washington Mutual Premier Mortgage Broker Agreement ("WM Agreement") (collectively, the "Agreements") attached hereto as Exhibits 1 and 2 respectively.

12.    Mortgage Link agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans.  Mortgage Link was responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process; choosing the loan product with the borrower; collecting relevant information and documentation in support of the loan application; preparing the loan application and submission package; and submitting the completed loan package to WaMu.

13.    Mortgage Link was compensated for any loans funded by WaMu, including the Mortgage Link Defective Loans.

14.    Pursuant to the Agreements, Mortgage Link expressly agreed to indemnify WaMu as follows:

> [Mortgage Link] will indemnify, defend and hold [WaMu] … harmless from any and all costs, claims, charges, actions, causes of action, losses or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of [Mortgage Link]'s negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [Mortgage Link].
> LBM Agreement ¶ 14.

4

COMPLAINT

> [Mortgage Link] will indemnify, hold harmless and defend [WaMu] . . .
> from and against any and all losses, claims, demands, damages,
> expenses or costs which in any way arise out of or relate to any alleged
> act or omission of [Mortgage Link] . . . , whether in connection with an
> Application, a loan or this Agreement.  WM Agreement ¶ 15.

**B. The Mortgage Link Defective Loans**

15.    Pursuant to the Agreements, Mortgage Link brokered the 17 Mortgage Link Defective Loans summarized on Exhibit 3, which is incorporated by reference and attached hereto.

16.    As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the Mortgage Link Defective Loans.  Accordingly, FDIC-R incurred losses in connection with the Mortgage Link Defective Loans.

17.    The Mortgage Link Defective Loans contained inaccurate and incomplete loan applications or other documentation because of misrepresentations in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.

18.    As an example, the loan application and documents for borrower JC contained numerous deficiencies, inaccuracies, and material misrepresentations. Mortgage Link prepared and submitted a loan application and documents for JC for a $519,520 loan in June 2006 that misrepresented his earnings as $13,000 per month as a self-employed independent contractor, which was more than twice his actual earnings as a salaried construction worker, as reflected on JC's actual tax returns. Accordingly, among other things, JC's loan application misstated JC's capacity to repay the loan.  Finally, the loan application and documents that Mortgage Link submitted misrepresented that the property would be JC's primary residence, but, in

fact, JC resided at another property, and never resided at the subject property as a primary residence, which he transferred to another person after purchase.

19.     As another example, in support of the borrower's credit history, Mortgage Link prepared and submitted a loan application and documents for MG for a loan in September 2006 for $353,600 that failed to disclose that MG had incurred $513,000 in mortgage debt on another property purchased two weeks prior to when the subject loan was funded.  Accordingly, among other things, the loan application misrepresented MG's credit and capacity to repay the loan.

20.     Taken together, the 17 Mortgage Link Defective loans include, *inter alia*, loans with undisclosed and/or misrepresented mortgage loan obligations, loans with false or misleading rental histories, loans with false employment histories, loans with inaccurate appraisals, loans with false occupancy representations and certifications; and loans with misrepresented sales transactions.

**C. WaMu's Sale of the Mortgage Link Defective Loans to the RMBS Trusts**

21.     After WaMu funded the Mortgage Link Defective Loans, WaMu sold each of them to the RMBS Trusts.

22.     In connection with such sales, and in reliance on the materials, representations, obligations, and remedies Mortgage Link provided to WaMu, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral.  With respect to defective loans, WaMu was liable to the RMBS Trusts, *inter alia*, where there was a material misrepresentation or omission in a loan application or other supporting documentation.

**D. The Trustee Action and FDIC-R's Settlement with Trustee**

23.     After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts.  On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for

6

losses resulting from such loans that WaMu sold to the RMBS Trusts, including the Mortgage Link Defective Loans.

24.    FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

25.    Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the Mortgage Link Defective Loans.  On September 5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the Mortgage Link Defective Loans.  Settlement of the Trustee's claims for that court approved amount was objectively reasonable.  FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual.  12 U.S.C. § 1821(d)(14).

26.    FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the Mortgage Link Defective Loans.  The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, *inter alia*:  misrepresentations, negligence, or fraud that occurred in the origination of the loan; appraisals that were inconsistent with underwriting guidelines; misrepresentations of income; and loan-to-value ratios that exceeded 100 percent. Given Mortgage Link's role and conduct in connection with the Mortgage Link Defective Loans, including Mortgage Link's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of or related to Mortgage Link's acts or omissions, including inaccurate or incomplete loan applications and supporting documentation prepared by or at the direction of Mortgage Link, and

COMPLAINT

mortgage loans that WaMu funded based on the applications submitted by Mortgage Link.

**E.  Mortgage Link's Breach of the Indemnification Obligations**

27.    On January 11, 2022, FDIC-R sent a demand letter to Mortgage Link seeking indemnification for its losses arising out of and/or related to Mortgage Link's acts and omissions and inaccurate or incomplete loan applications or other documentation in connection with the Mortgage Link Defective Loans.  Mortgage Link has not honored its obligation to indemnify under the Agreements.

28.    The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees.  In order to enforce FDIC-R's rights under the Agreements, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees.  In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29.    All conditions precedent to the relief sought in this action have been fulfilled.

**CLAIM FOR RELIEF**

**(Contractual Indemnification)**

30.    Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31.    The Agreements are valid and enforceable contracts.

32.    Plaintiff substantially performed all its obligations under the Agreements.

33.    FDIC-R is entitled to indemnification from Mortgage Link for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising out of Mortgage Link's acts or omissions and the inaccurate or incomplete applications or other documentation prepared by or at the direction of Mortgage Link, in connection with the Mortgage Link Defective Loans.

COMPLAINT

34.    Mortgage Link breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A.    A judgment against Mortgage Link in an amount to be proven at trial for its breach of its indemnification obligations;

B.    Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C.    Reasonable attorneys' fees;

D.    Costs and expenses; and

E.    Any other relief as the Court deems just and proper.

DATED: August 14, 2023          MARK MIGDAL & HAYDEN


                                By:          /s/ Paul A. Levin
                                Paul A. Levin


DATED: August 14, 2023          MORTGAGE RECOVERY LAW GROUP, LLP


                                By:          /s/ Michael H. Delbick
                                Michael H. Delbick


DATED: August 14, 2023          FEDERAL DEPOSIT INSURANCE CORPORATION


                                By:          /s/ Joshua H. Packman
                                Joshua H. Packman (to seek admission to pro hac vice)

                                Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

9

COMPLAINT